O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **SANTA ANA POLICE OFFICERS ASSOCIATION, ET AL.,**<br><br>**Plaintiffs,**<br><br><br>**vs.**<br><br>**CITY OF SANTA. ET AL.,**<br><br>**Defendants.** | **Case No.: SA CV 15-1280-DOC (DFMx)**<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  [41]** |

Before the Court is Defendants' Motion for Summary Judgment ("Motion") (Dkt. 41).

## I.     Facts

### A.  Termination and Initial Investigations

Plaintiff Corey Slayton ("Officer Slayton") is a full-time police officer for the Santa Police Department ("Police Department"). On December 28, 2012, Officer Slayton received a radio call because an individual was suspected of vandalizing a car. *See* Defendants' Statement of Uncontroverted Facts ("SUF") (Dkt. 41-2) No. 1; Reply to Plaintiffs' Additional Material Facts ("SAF") (Dkt. 47) No. 147.[1] Officer Slayton responded to the call, during which time a Police K-9 bit the suspect. *See* SUF Nos. 1–2. The Police Department launched a "Use of Force Investigation" that same day. *Id.* No. 1. Officer Slayton was interviewed regarding the incident

---

[1] Unless otherwise noted, the Court only provides citations to undisputed facts.

on December 28, 2012, and again on October 25, 2013. SUF No. 2; SAF No. 239. On December 20, 2013, the Police Department served Officer Slayton with a Notice of Intended Discipline. SAF No. 317. Ultimately, on February 4, 2014, the Police Department instituted disciplinary action against Slayton and he was terminated for violations of Departmental Order 110, Section 1(H)(1) Truthfulness; Departmental Order 425, Section 1, Authorized Use of Force; and Departmental Order 425, Section 5, Officer's Duties. SUF No. 7; Notice of Adverse Decision (Dkt. 42-6) Ex. 6 at 1.

When the Notice of Intended Discipline was issued in December 2013, Officer Slayton was placed on administrative leave. SAF No. 318. On December 20, 2013, Sergeant Michael Claborn ("Sergeant Claborn") escorted Officer Slayton to his locker, where Officer Slayton gathered some personal belongings. *Id.* Nos. 322–323; *see* Sergeant Michael Claborn Memorandum (Dkt. 49-5) Ex. 8 at 1. Sergeant Claborn later returned to Officer Slayton's locker, with another sergeant, to change the lock on Officer Slayton's locker. SAF No. 324. Plaintiffs[2] assert Sergeant Claborn entered Officer Slayton's locker to place equipment inside of it. *Id.* No. 325. Defendants assert that Sergeant Claborn never entered the locker outside of Officer Slayton's presence, SUF No. 11; they instead state that after Officer Slayton retrieved his personal items, Sergeant Claborn placed Officer Slayton's department issued items in the locker. Both parties cite to Sergeant Claborn's memo from December 20, 2013, which reads in relevant part:

> I issued Officer Slayton a copy of the memorandum placing him on paid administrative leave. With the assistance of Sergeant Jose Gonzalez, I collected his police administrative card, police department access card, and parking structure access card. I placed his department issued Glock handgun serial #GZA405, department issued keys, badge, and flat badge inside his assigned locker, #418, which was secured with a keyed lock from the Professional Standards Unit. His outside locker (#1449) didn't have a combination padlock. I placed a key padlock from the Professional

---

[2] The Court uses the plural "Plaintiffs" as this suit is brought by both Officer Slayton and the Santa Ana Police Officers Association.

Standards Unit on locker #1449. I placed Officer Slayton's police

identification card, police department access card, parking structure access

card and the keys to the padlocks in a yellow envelope in the top drawer of

the Professional Standards Unit file safe.

Sergeant Michael Claborn Memorandum at 1.

Officer Slayton brought this action in Orange County Superior Court on January 22, 2014. *See* Original Complaint (Dkt. 1-1). On February 7, 2014, he appealed his termination to the Santa Ana Personnel Board and prevailed in his appeal. Third Amended Complaint ("TAC") (Dkt. 32) ¶ 46; SUF No. 12. Officer Slayton was reinstated to employment as a police officer on July 18, 2014. *Id.*

After returning to work, Officer Slayton received a formal Notification of Interview on August 5, 2014. Notification of Interview, August 5, 2014 (Dkt. 42-8). The Notification of Interview related to an incident that occurred on June 28, 2013. Specifically, the Notification of Interview described why Officer Slayton was under investigation as follows: "On 6-28-13, it is alleged you left the city [of Santa Ana] to conduct personal business in the City of Irvine without supervisor approval. While outside the city and on-duty you made contact with members of the Irvine Police Department and acted in an unprofessional manner." *Id.* at 1. After the investigation, Officer Slayton was served with an official reprimand on August 20, 2014. *Id.* As stated in the Official Reprimand, Officer Slayton, without permission, had attempted to contact an Irvine Police Department officer who was working at a DUI checkpoint. Official Reprimand (Dkt. 42-9) at 1. Plaintiffs state they are not challenging the merits of the reprimand. SAF No. 14 ("[T]he merits of the reprimand are not being challenged . . . ."). Rather, they contend Defendants violated the Public Safety Officers Procedural Bill of Right Act ("POBRA") in completing the investigation over one year after the incident occurred. *See* SAF No. 13 ("Slayton was served with an official reprimand for something that had happened over a year prior"); *see id.* ("On or about October 24, 2014, Defendant Claborn and Revere discuss the statute of limitations, and justified among themselves moving forward with the disciplinary action.").

On August 15, 2014, Officer Slayton received a Notification of Interview for an incident that occurred on August 31, 2013. Notification of Interview, August 15, 2014 (Dkt. 42-10). The Notification of Interview stated the Police Department was investigating Officer Slayton's "conduct surrounding the arrest of suspect Alfredo Muniz on August 31, 2013." *Id.* at 1. The Police Department also investigated Officer Heitmann for the incident, which involved a citizen complaint of excessive force and a missing wallet; Sergeant Claborn interviewed Office Heitmann regarding the incident prior to Officer Slayton's reinstatement. SAF Nos. 397, 399– 401, 406. Sergeant Claborn interviewed Officer Slayton regarding the incident on August 29, 2014. SAF No. 429. Officer Slayton's counsel objected to the Notice of Interview prior to the interview and again at the interview. *Id.* Nos. 430–31.

While he was investigating the incident, Sergeant Claborn exchanged several emails with Commander Christopher Revere ("Commander Revere"). *See* Claborn-Revere Emails (Dkt. 49-56) Ex. 97. In an email dated October 14, 2014, Commander Revere raised the issue of whether the one-year period to investigate Officer Slayton had been tolled during the time he was terminated; he specifically wrote, "Slayton was brought back, interviewed August 29, and the case completed. Since he was off-duty for several months, I believe we were justified in tolling the statute due to his absence." *Id.* at 2. After receiving a response, Commander Revere directed Sergeant Claborn to add a section to the report describing the time the investigation was tolled. *Id.* at 1 ("Copy – add a section to your narrative and describe how many days was [sic] paused and for what reason.").

Sergeant Claborn completed his report regarding this incident on January 9, 2015. SAF No. 438. In the report, he found Officer Slayton had violated three Departmental Orders, and that Officer Slayton had violated one Departmental Order. *Id.*; January 9, 2015 Report (Dkt. 49-53) at 1, 16. On January 31, 2015, Commander Revere sent an email to Police Chief Carlos Rojas ("Chief Rojas") regarding the report. SAF 440. In his email, Commander Revere wrote, "Two memos attached related to the Heitmann/Slayton UOF [Use of Force] incident where there was no documentation on the UOF and the arrestee's property was also lost. One is for the file to show the statute has passed and a second to Training Division so they are trained

properly."  Dkt. 49-57 Ex. 98 at 1. On February 2, 2015, Chief Rojas wrote a memorandum entitled "Passing of Statutory Time Period to Discipline." *Id.* at 2. In that memorandum, Chief Rojas concluded that "[t]he time period which elapsed from the date the Department became aware of the alleged misconduct to the time I determined the allegations were sustained is over the one-year statutory time limit to provide discipline permitted by Government Code 3304(d)(1)." *Id.* Chief Rojas then explicitly stated he was "not issuing discipline in this matter" and ordered that Officers Heitmann and Slayton receive training. *Id.* Subsequently, Commander Esparza conducted a separate review of the August 31, 2013 incident. *See generally* Memorandum, July 9, 2015 (Dkt. 49-42) Ex. 82. Commander Esparza wrote an internal memorandum dated July 9, 2015 regarding his findings. *Id.* Chief Rojas reviewed this report and again concluded the one year time period to issue discipline had lapsed. Memorandum, August 23, 2015 (Dkt. 42-11) Ex. 11 at 1. Chief Rojas explicitly stated the "investigation will not be included as part of . . . Officer Slayton's (#3801) general personnel file." *Id.*

### B. Body Camera & September 26, 2014 Incident

When Officer Slayton returned to work, he began to wear a body camera. SAF No. 503. He indicates he began wearing a body camera to protect himself against unfounded allegations. *Id.* No. 571.

On September 26, 2014, Corporal Dan Park ("Corporal Park") was attempting to detain an uncooperative suspect SUF No. 19. The suspect hit Corporal Park in the face, and a struggle ensued. *See id*. Corporal Park tackled the suspect, and eventually detained the suspect with the assistance of two firefighters and Officer Slayton, who sat on the suspect's legs. *Id.* Deputy Chief Douglas McGeachy ("Deputy Chief McGeachy") ordered Officer Slayton to remove his personal body camera on October 1, 2014. SAF No. 567. On October 4, 2014, Sergeant Andy Alvarez ("Sergeant Alvarez") informed Officer Slayton he needed to talk to him regarding the September 26, 2014 use of force incident. *Id.* No. 20. Officer Slayton requested that he be allowed to have representation for the administrative interview. *Id.* No. 21. Sergeant Alvarez did not speak with Officer Slayton on that date. *Id.* No. 22. Later, on November 2, 2014, Sergeant Alvarez again met with Officer Slayton. Officer Slayton again asked for a

representative to be present. Sergeant Alvarez did not allow Officer Slayton to have a representative, however; Sergeant Alvarez stated Commander Revere had told him that Officer Slayton was not entitled to a representative because he was not being investigated for misconduct. *Id.* No. 23. Sergeant Alvarez proceeded to speak with Officer Slayton on November 2, 2014. *See id.* On December 19, 2014, Sergeant Alvarez again spoke with Officer Slayton. *Id.* No. 24. At the December 19, 2014 meeting, Sergeant Alvarez asked Officer Slayton whether he had been wearing a body camera at the time of the September 26, 2014 incident. *Id.* No. 25. Officer Slayton acknowledged that he was wearing a body camera but stated that he would not give a copy to Sergeant Alvarez, as the copy of the footage was his personal property. *Id.* No. 27.

After the December 19, 2014 meeting, Deputy Chief McGeachy told Sergeant Alvarez he needed to conduct another interview with Officer Slayton and order him to provide a copy of the September 26, 2014 incident. *Id.* No. 28. Thus, on January 10, 2015, Sergeant Alvarez contacted Officer Slayton again. *Id.* No. 29. During the January 10, 2015 conversation, Sergeant Alvarez ordered Officer Slayton to provide the video from his camera as well as other videos of any other crime-related incidents and to provide it by the beginning of Officer Slayton's next shift. *Id.* No. 30. Slayton objected to this request. SAF No. 589. However, Officer Slayton complied with Sergeant Alvarez's order on January 11, 2015 by producing the relevant recording. *Id.* No. 597.

### C. Miscellaneous Facts

Apart from the investigations discussed above, Officer Slayton highlights a variety of other facts he asserts are evidence of Defendants' retaliation against him. First, Officer Slayton states his locker was searched. Specifically, on July 17, 2014, Sergeant Claborn sent an email to Officer Slayton regarding his locker. The email states, "You were previously assigned exterior locker #1449, however, the locking mechanism was rusted and broken. I had the cleaning crew clean out locker #1414, which has been reassigned to you . . . . Another member of Professional Standards was with me when I moved the couple of items you had from locker #1449 to locker #1414." Locker Emails (Dkt. 49-26) at 1.

Second, Officer Slayton alleges he received a negative performance evaluation. Officer Slayton was present and signed off on a performance evaluation after he was reinstated in July 2014. SAF No. 498. The performance evaluation covered the period from December 1, 2012 through December 1, 2013. *See* Performance Evaluation (Dkt. 49-21) Ex. 57 at 1. Then-acting Sergeant Gilbert Hernandez ("Sergeant Hernandez") completed the evaluation and signed it on December 15, 2013. SUF No. 457. The evaluation referenced three professional standards investigations involving Officer Slayton. SAF No. 473. Officer Slayton received a score of "2" (below average) on the judgment section of the performance evaluation. SAF No. 471. He received a score of "4" (exceeds job standards) for his overall rating. Performance Evaluation at 7.

Third, Officer Slayton alleges he has not been promoted. He applied for a Regional Narcotics Detective opening in September 2015. SAF No. 613. He was one of nine individuals to pass the relevant test. *See* Memorandum, September 10, 2015 (Dkt. 49-77) Ex. 118 at 2. However, Officer Slayton was not the officer selected for the one available position. *Id.* Officer Slayton also applied for a special assignment as a motor officer. SAF No. 615. He was one of eight individuals who was scheduled to interview for the position. Email, September 8, 2015 (Dkt. 49-78) Ex. 119 at 2. Officer Slayton was not selected for the one available position. *Id.* at 1. Along with the other candidates who were deemed qualified but not selected, Officer Slayton was placed on a six-month eligibility list for future openings. *Id.*; *see also* Memorandum, September 10, 2015 at 2.

## II.    Procedural History

On January 22, 2014, Slayton and the Santa Ana Police Officers Association (collectively, "Plaintiffs") filed suit against the City of Santa Ana ("the City"), the Santa Ana Police Department, Police Chief Carlos Rojas, and DOES I-X in Orange County Superior Court ("State Court") *See generally* Original Compl. On July 13, 2015, the State Court granted Plaintiffs' Motion to Name Doe Defendants; thus, Plaintiffs added Christopher Revere, William Nimmo, Michael Claborn, and Douglas McGeachy as individual Defendants. Order Granting Leave to File First Amended Complaint and Name Doe Defendants, July 13, 2015 ("July 13,

2015 State Court Order") (Dkt. 1-6) Ex. F at 2. The case was removed to this Court on August 11, 2015. Notice of Removal (Dkt. 1).

Plaintiffs filed their Second Amended Complaint ("SAC") (Dkt. 18) on October 19, 2015. Defendants moved to dismiss parts of the SAC on November 2, 2015 (Dkt. 20). The Court issued an Order Granting in Part and Denying in Part this motion on December 2, 2015 ("Second MTD Order") (Dkt. 30). Notably, the Court dismissed with prejudice Plaintiffs' *Monell* claims against the City and Police Department. Second MTD Order at 13.

Plaintiffs filed their Third Amended Complaint ("TAC") (Dkt. 32) – the operative complaint – on December 15, 2015 (Dkt. 32). The Court issued an Order Granting Defendant's Motion to Dismiss Portions of Plaintiffs' Third Amended Complaint ("Third MTD Order") (Dkt. 39)[3] on February 1, 2016. The Court dismissed Plaintiffs' first, fourth, and fifth claims with prejudice, leaving Plaintiffs with the following causes of action: their second cause of action for a Writ of Mandate Pursuant to § 1085 for violation of Government Code § 3500, *et seq.*; their third cause of action for declaratory relief (based on their state law claim); and their sixth cause of action for civil rights violations against under 42 U.S.C. § 1983 against the Individual Defendants.

Defendants filed the instant Motion on February 1, 2016, seeking summary judgment on all of Plaintiffs' remaining claims. Plaintiffs opposed on February 8, 2016 (Dkt. 46), and Defendants replied on February 12, 2016 (Dkt. 53). The Court held a hearing on February 29, 2016 (Dkt. 70).

### III.   Summary Judgment Under Rule 56

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party.

---

[3] This citation references the Court's Amended Order that was issued to correct a typographical error.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

It is not the court's responsibility "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*; *see also Entm't Research Grp., Inc. v. Genesis Creative Grp., In.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("Judges are not like pigs, hunting for truffles buried in briefs.") (internal quotation marks and citations omitted). "The alternative, requiring the district court to search the entire record, even though the adverse party's response

does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair." *Carmen*, 237 F.3d at 1031; *see id*. ("If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial.").

## IV.   Discussion

As noted above, Plaintiffs bring a claim under § 1983 for violations of Officer Slayton's constitutional rights. In reality, Plaintiffs assert three claims in one: they contend Defendants violated Officer Slayton's First Amendment rights by retaliating against him for filing this action, his Fourth Amendment rights by subjecting him to unreasonable searches, and his Fourteenth Amendment rights by denying him due process. Section 1983 provides:

> Every person who, under color of any statute ... of any State ... subjects, or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured . . . .

To prove a violation under § 1983, Plaintiff must show that 1) Defendants' conduct deprived Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) Defendants committed the act under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiffs' assert their § 1983 claim against individual Defendants Carlos Rojas, Christopher Revere, William Nimmo, Michael Claborn, and Douglas McGeachy. "Suits against government officials under § 1983 in their individual capacity 'seek to impose personal liability upon a government official for actions he takes under color of state law." *Garcia v. L.A. County Sheriff Dep't*, No. CV 15-08329-DOC (DFM), 2016 WL 286987, at *4 (C.D. Cal. Jan. 22, 2016) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participate in another's affirmative acts, or omits to perform an act which he is

legally required to do that causes the deprivation of which complaint is made." *Johnson v. Dufy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

Separately, Plaintiffs seek injunctive and declaratory relief for Defendants' violations of California state law.

Defendants move for summary judgment on all of Plaintiffs' claims. The Court will first analyze Plaintiffs' First Amendment retaliation claim.

## A. Legal Standard for First Amendment Retaliation

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). However, courts have recognized that "the State's interests as an employer in regulating the speech of its employees" require them to balance the interests of the public employee as a citizen in commenting upon matters of public concern against the interest of the State as an employer in promoting the efficiency of public services. *Id.* (quoting *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012)) (internal quotation marks omitted).

To arrive at the proper balance when evaluating a First Amendment retaliation claim, the Court asks "a sequential five-step series of questions." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). First, the Court considers whether the plaintiff has engaged in protected speech activities, "which requires to plaintiff to show that the plaintiff: (1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee." *Karl*, 678 F.3d at 1068. If the plaintiff makes these two showings, the Court asks whether the plaintiff "has further shown that she (3) suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor." *Id.* If the plaintiff meets her burden as to the first three steps, "thereby stating a prima facie claim of First Amendment retaliation, then the burden shifts to the government to escape liability by establishing either that: (4) the state's legitimate administrative interests outweigh the employee's First Amendment rights; or (5) the state would have taken the adverse employment action even absent the protected speech." *Id.* "[A]ll the factors are necessary, in the sense that

failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc).[4]

"The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases." *Coszalter v. City of Salem*, 320 F.3d 968, 974–75 (9th Cir. 2003). The goal is "to prevent, or redress, actions by a government employer that chill the exercise of First Amendment rights." *Id.* (quoting *Rutan v. Republican Party*, 497 U.S. 62 (1990)) (internal quotation marks omitted). Many different types of employment actions may have an impermissible chilling effect. "Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment Rights." *Id.* at 975.

### 1. Speech on a Matter of Public Concern as a Private Citizen

The parties do not dispute that Officer Slayton satisfies the first two requirements of the First Amendment retaliation test. Mot. at 21 ("Plaintiff has sued as a public employee and as a member of the SAPOA [Santa Ana Police Officers Association] on a matter of public concern i.e. allegations that Defendants have violated state statutes and federal law."); Opp'n at 22. Indeed, "when government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees, . . . their speech is inherently a matter of public concern." *Alpha Energy Savers*, 381 F.3d at 926 (internal quotation marks and citation omitted). And, "[l]itigation seeking to expose such wrongful government activity is, by its very nature, a matter of public concern." *Id.* at 927. Officer Slayton brings claims against the City of Santa Ana, the Police Department, and several high-ranking police officials. The Court therefore finds that Officer Slayton's filing of this lawsuit constitutes speech on a matter of public concern. *See Edinger v. City of Westminster*, Case No.: SA CV 14-0145-DOC (RNBx), at *8 (C.D. Cal. Dec. 14, 2015).

---

[4] At oral argument, Plaintiffs' counsel appeared to raise a new claim under the First Amendment: that Officer Slayton's First Amendment rights were violated because he was ordered not to discuss pending investigations. This allegation was not stylized as a First Amendment claim in either Plaintiffs' Third Amended Complaint, *see* TAC ¶¶ 148–49, or their Opposition, *see* Opp'n at 22–24. Defendants were not adequately put on notice of this separate First Amendment claim and thus the Court will not analyze it here. *See* Arguments raised for the first time at oral argument are waived. *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) (arguments raised for the first time at oral argument are waived). In any event, it appears Plaintiffs are specifically arguing Defendants violated Officer Slayton's rights under the Meyers-Millias-Brown Act. *See* Opp'n at 21. As discussed below, this claim is better addressed in state court.

The Court also concludes Officer Slayton's lawsuit constitutes private speech. There is no question this lawsuit is speech outside the chain of command. *See Boyd v. Edwards*, No. 6:15-CV-238-MC, 2015 WL 3407890, at *6 (D. Or. May 27, 2015) ("Boyd's lawsuit is also clearly outside the chain of command and constitutes private speech."). Nor was the speech made pursuant to Officer Slayton's official job responsibilities. *See Karl*, 678 F.3d at 1071 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006)). Accordingly, the Court concludes Officer Slayton engaged in protected speech activity by filing this lawsuit. Though Plaintiffs do not clearly argue this point, the Court finds that Plaintiffs' appeal of his termination to the Santa Ana Personnel Board also constitutes protected speech. Outside the filing of the original lawsuit and Officer Slayton's appeal of his termination to the Santa Ana Personnel Board, Plaintiffs have not referenced any other instances of protected speech. *See* Opp'n at 22.

### 2.    Adverse Employment Actions & Causation

As discussed above, Plaintiffs have shown Officer Slayton spoke on a matter of public concern. The Court will now proceed to the next step of the First Amendment retaliation analysis: whether Office Slayton "suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor." *Karl*, 678 F.3d at 1068

"To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden." *Coszalter v. City of Salem,* 320 F.3d 968, 975 (9th Cir. 2003). In *Coszalter*, the Ninth Circuit stated that in First Amendment retaliation cases, the goal is to "prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights." *Id.* at 974–75 (quoting *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 73, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). Therefore, the Ninth Circuit clarified the appropriate inquiry is whether the action is "reasonably likely to deter employees from engaging in protected activity." *Id.* at 976 (internal quotation marks omitted); *see also id.* (holding that "if the plaintiffs in this case can establish that the actions taken by the defendants were 'reasonably likely to deter [them] from engaging in protected activity [under the First Amendment],' they will have established a valid claim

under § 1983"); *see also Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989) (defining the relevant inquiry as whether the state has taken "action designed to retaliation against and chill political expression") ."Various kinds of employment actions may have an impermissible chilling effect." *Id.* at 975.

"Minor indignit[ies] an de minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim." *Blair v. Bethel School. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010). "Rather, for adverse, retaliatory actions to offend the First Amendment, they must be of a nature that would stifle someone from speaking out. The most familiar actions are 'exercise[s] of government power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

To establish that retaliation was a substantial or motivating factor behind an adverse employment action, a plaintiff may introduce evidence that (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to others; or (3) the proffered explanations for the adverse action were false and pretextual." *Ellins*, 710 F.3d at 1062 (citing *Coszalter*, 320 F.3d at 977); *see also Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750–52 (9th Cir. 2001). Additionally, "[a] defendant's conduct cannot be motivated by a plaintiff's exercise of his First Amendment rights if he is unaware that the plaintiff exercised those rights." *Anselmo v. Mull*, No. 2:12-01422 WBS EFB, 2013 WL 5817560, at *14 (E.D. Cal. Oct. 29, 2013). Therefore, "[t]o survive summary judgment, a plaintiff alleging a First Amendment retaliation claim must produce evidence that the governmental actor had knowledge of his protected speech." *Occhionero v. City of Fresno*, 386 Fed. App'x 745, 745 (9th Cir. 2010); *see also Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1150–51 (N.D. Cal. 2013); *Alpha Energy Savers*, 381 F.3d at 929.

### a. Officer Slayton's Alleged Adverse Employment Actions

Here, Officer Slayton claims he suffered the following adverse employment actions:

1) subjected to investigations wherein his POBRA rights and requests for representation have been denied; 2) threatened with punitive action if he did not answer questions or turn over his personal property; 2) [sic] served with written reprimands for matters that are outside the statute of limitations and for matters that are false; 3) denied proper notice of investigations (when other involved officers were provided proper notices); 4) denied back pay after being reinstated; 5) subjected to false statement regarding his successful appeal placed in personnel files and in official documents; 6) subjected to findings of non-sustained allegations of misconduct changed to sustained findings; 7) subjected to false and negative performance evaluations; 8) he had his locker entered into without justification, 9) ordered to remove a body-camera even though there is no policy against an employee wearing one; and 10) passed over for promotions and/or selections to special assignments.

Opp'n at 23. As an initial matter, Plaintiffs do not provide a single citation to the record when listing these allegedly adverse employment actions (or in the entirety of their discussion of the First Amendment retaliation claim), *see* Opp'n at 22–24; rather, Plaintiffs simply cite to all 618 facts included in the Statement of Disputed Facts. Opp'n at 23 ("As demonstrate[d] by the Statement of Disputed Facts . . . ."). This is clearly insufficient. "The court is not required to review evidence that is not specifically referenced in the plaintiff's opposition to the motion for summary judgment." *Holmes v. Tenderloin Hous. Clinic*, 772 F. Supp. 2d 1074, 1091 (N.D. Cal. 2011) (citation omitted); *see also Keenan v. Allan*, 91 F.3d at 1279 (noting that the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment"). Plaintiffs' failure to "cite evidence in support of [their] allegations is sufficient basis to grant [Defendants'] motion for summary judgment." *Riese v. County of Del Norte*, Case No. 12-cv-03723-WHO, 2014 WL 4089195, at *5 (N.D. Cal. Aug. 19, 2014). Thus, the Court finds that Plaintiffs' failure to specifically cite evidence is a sufficient basis for granting Defendants' Motion. Additionally, Plaintiffs, in a scattershot fashion, simply describe adverse employment

actions in general terms (i.e. "subjected to findings of non-sustained allegations of misconduct changed to sustained findings") without detailing what events they are referring to, and without linking them to the individual Defendants. *See* Opp'n at 23.

Nonetheless, the Court has examined the record (to a reasonable extent) to determine whether Plaintiffs have presented evidence creating questions of material fact. The Court will analyze each of the purported adverse employment actions in turn and, where necessary, discuss whether Plaintiffs have established causation.

### b.  POBRA Rights & Requests

Officer Slayton's first alleged adverse employment action is the blanket statement he was "subjected to investigations wherein his POBRA rights and requests for representation have been denied." Opp'n at 23. Though not stated with the requisite level of particularity, it appears Plaintiffs have two major complaints under California Peace Officers' Procedural Bill of Rights: (1) Officer Slayton was not provided proper notice of investigations, and (2) he was denied representation during various investigations.

As an initial matter, Plaintiffs have presented the Court with no argument or authority to suggest that violations of POBRA constitute adverse employment actions for purposes of § 1983 claims. Based on the Court's review of the case law, it appears that POBRA violations cannot form the basis of Plaintiffs' First Amendment claims. Indeed, it is well established that "[a]s a general rule, a violation of state law does not lead to liability under § 1983." *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998). A district court in this Circuit recently reached a similar conclusion. In *Fotinos v. Fotinos*, the court considered a plaintiff's claim that three defendants violated her rights under the First Amendment. No. C 12-953, 2013 WL 1195644, at *8 (N.D. Cal. Mar. 22, 2013). Plaintiff specifically alleged the three defendants violated provisions of California law. *Id.* The court dismissed Plaintiff's First Amendment Claim because they were premised on violations of California law. *Id.[5]* Similarly here, the Court concludes that Plaintiffs' broad allegations that the individual Defendants violated POBRA are plainly insufficient to even state a claim under § 1983.

---

[5] Additionally, courts have found that "POBR[A] only applies to employers," not to individual defendants. *Lewitt v. City of Hermosa Beach*, No. CV 09-2543 CAS (PJWx), 2009 WL WL 1971378, at *3 (C.D. Cal. July 6, 2009).

However, *even if* Plaintiffs have shown that alleged POBRA violations could form the basis of Plaintiffs' § 1983 claim – which they have not – they have not adequately proven any POBRA violations. To be clear, there is no indication that Plaintiffs are challenging the merits of the various investigations into his conduct, *see* Opp'n at 12 (Plaintiffs complaining that Officer Slayton "subject to investigations wherein his invoking of his POBRA rights and request for representation have been denied"); rather, Plaintiffs are challenging *how* those investigations were conducted – namely, that Defendants violated POBRA. The Court will analyze Plaintiffs' two major complaints in turn.

### i.  Notice of Investigations

First, Plaintiffs broadly contend the individual Defendants failed to provide sufficient notice of the various investigations. For instance, Plaintiffs take issue with Officer Slayton receiving a Notice of Interview stating the Police Department was conducting an investigation into Officer Slayton's "conduct surrounding the arrest of suspect Alfredo Muniz on August 31, 2013." Notification of Interview, August 15, 2014, at 1. Plaintiffs suggest that this notification constitutes a violation under § 3303 of POBRA.

Section 3303 provides that "[t]he public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation." In *Hinrichs*, a California appellate court stated it did "not necessarily disagree with the Department's contention that it was not obligated to give Hinrichs [plaintiff] more than a general description of the allegations against her." *Hinrichs v. County of Orange*, 125 Cal. App. 4th 921, 933 (2004). Under this standard, the Court finds Officer Slayton was provided with at least a general description of the investigation – indeed, Officer Slayton was informed he was being investigated for an interaction with a particular individual, Alredo Muniz, on a particular date, August 31, 2013. Thus, Plaintiffs have not adequately shown Office Slayton's POBRA rights were violated, and therefore, the Court does not have a basis for finding the August 15, 2014 Notification of Interview constituted an adverse employment action.[6] And *even if* the August 15, 2014 Notice of

---

[6] Again, it is unclear what adverse employment actions Plaintiffs are complaining about in this section. To the extent Plaintiffs are complaining about the October 19, 2015 Notice of Investigation, *see* SAF No. 608, the Court notes that that Notice was prepared by Sergeant Matt Brown, *see* Notice of Investigation, September 19, 2015 (Dkt. 49-74) Ex. 115 at 1; Notice of Investigation, October 19, 2015 (Dkt. 49-75) Ex. 116 at 1. Sergeant Matt Brown is not an individual Defendant in

Investigation was technically deficient, the Court cannot conclude the minor violation of § 3303 Officer Slayton alleges is an action that is "reasonably likely to deter employees from engaging in protected activity." *Coszalter*, 320 F.3d at 975.

In short, the Court concludes that (1) Plaintiffs have failed to specifically point to evidence in the record with particularity (which warrants a finding in Defendants' favor by itself), (2) Plaintiffs have provided no authority to suggest POBRA violations can form the basis of a § 1983 claim (and indeed the authority suggests the opposite), (3) Plaintiffs have not adequately shown Officer Slayton's POBRA rights under § 3303 were violated, and (4) even if they had, the general description included in the Notice of Investigation (as opposed to a slightly more specific description) does not meet the definition of an adverse employment action.[7]

### ii.   Denial of Representation

Second, Plaintiffs broadly contend the individual Defendants failed to allow Officer Slayton representation during his various investigations. Again, Plaintiffs provide no citations to the record. *See* Opp'n at 23. The Court finds that this alone warrants a finding in Defendant's favor. *See Harper v. Lugbauer*, Case No. 11-cv-01036-JST, 2014 WL 1266305, at *13 (N.D. Cal. Mar. 21, 2014) ("These citations are insufficient to raise a genuine issue of material fact because Harper fails to cite to particular facts within these documents as required by Rule 56(c)) (citing *Keenan*, 91 F.3d at 1279). Second, as discussed above, Plaintiffs have provided no authority to suggest violations of POBRA constitute adverse employment actions for purposes of § 1983.

Even more, there is little support for Officer Slayton's argument that his rights to representation under § 3303 were violated. Officer Slayton does not specify what incidents he is referring to, but it appears he is mainly referring to the denial of representation during his

---

this case; and Plaintiffs have not alleged any link between the October 19, 2015 Notice of Investigation and the individual Defendants in this case.

[7] The last point is supported by the California appellate court's *Hinrichs* decision, which noted that POBRA violations "are subject to a harmless error analysis." 125 Cal. App. 4th at 928. In *Hinrichs*, the court found the plaintiff had been adequately informed and that the Department's failure to provide more details about the nature of the investigation 'was harmless as a matter of law.'" *Id.* The Court finds the same here. Plaintiffs have made no specific allegations that Officer Slayton was prejudiced in any way by the description provided in the August 15, 2014 Notice of Investigation; therefore, even if the Police Department committed an error, the Court finds it to be harmless and therefore cannot conclude it constitutes an adverse employment action.

interviews with Sergeant Alvarez in connection with the September 26, 2014 incident.[8] Based on the Court's independent review of the record, it appears Sergeant Alvarez spoke with Officer Slayton without a representative on November 9, 2014, December 19, 2014, and January 10, 2015. Though unclear, Plaintiffs' theory appears to be that Defendants Claborn and McGeachy improperly informed Sergeant Alvarez that Officer Slayton was not entitled to representation.

The trouble with Plaintiffs' theory is twofold. First, § 3303 expressly provides that, "[t]his section *shall not apply to any interrogation of a public safety officer in the normal course of duty*, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer . . . " (emphasis added). Defendants have persuasively argued that Sergeant Alvarez interviewed Officer Slayton "in the routine course of Alvarez's responsibilities to gather statements from officers to complete a use of force investigation." Mot. at 15; *see id.* ("There is no evidence whatsoever that Slayton was under investigation and subjected to interrogation that could lead to punitive action. Rather it is clear that Alvarez was gathering facts in the normal course of his duties to finalize a supervisors['] use of force report and then to gather evidence as Slayton had video footage of the incident."). Specifically, Defendants cite Departmental Order 425, which provides that supervisors must "[o]btain the basic facts from involved officers." Departmental Order 425 (Dkt. 42-12) Ex. 12. Plaintiffs offer no meaningful response to this argument in their Opposition. Thus, because the evidence shows Sergeant Alvarez was conducting interviews with Officer Slayton in "the normal course of duty," Officer Slayton's § 3303 rights did not attach.

Second, §3303(i) expressly provides that an officer is entitled to representation upon either filing of a formal written statement or charges, or "whenever an interrogation focuses on matters that are likely to result in punitive action." In this case, Sergeant Alvarez stated in his deposition that he did not believe Officer Slayton had committed any misconduct. Deposition of Andy Alvarez ("Alvarez Deposition") (Dkt. 42-13) Ex. 13 at 14:11–15 ("He [Commander Revere] also added that POBOR really couldn't attach because there's no – in my mind, and he

---

[8] That appears to be the case based on Plaintiffs' discussion in the fact section. *See* Opp'n at 7 ("Eight days after the arrest incident, Sgt. Alvarez met with Corey Slayton to conduct an administrative interview. Slayton invoked his POBRA rights and requested to have representation present.").

asked me this, if he thought there was any misconduct involved, and I told him I did not think so."). Because Plaintiffs have not pointed to any evidence that Sergeant Alvarez's conversations with Officer Slayton were "likely to result in punitive action," the Court cannot find a violation of Officer Slayton's rights to representation under § 3303(i). Thus, as with the alleged violation discussed above, Plaintiffs have not produced evidence demonstrating an adverse employment action.

To the extent Plaintiffs are alleging POBRA violations for incidents other than the ones discussed above, the Court finds Plaintiffs have failed to clearly identify these for the Court. *See* Opp'n at 22; *see Harper*, 2014 WL 1266305, at *17 ("Harpers' fails to cite to specific facts in these documents that raise a genuine issue of material fact as to whether Lugbauer defamed her as required by Rule 56(c)) (citing *Keenan*, 91 F.3d at 1279) (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact")).

### iii.   Substantial or Motivating Factor

To the extent, *arguendo*, that Officer Slayton POBRA rights were violated and he suffered an adverse employment action, Plaintiffs have not put forth sufficient evidence that Officer Slayton's protected conduct was a substantial or motivating factor in causing that adverse employment action. In their Opposition, Plaintiffs state that *all* of the purported alleged employment actions suffered by Officer Slayton "were in close proximity to Slayton's protected activity and his return to the workplace." Opp'n at 24. Plaintiffs simply offer this blanket statement; they do not attempt to link Officer Slayton's protected conduct with either of the purported POBRA violations discussed above. Indeed, Plaintiffs provide no further analysis as to causation, and again, fail to provide any citations to the record. *See* Opp'n at 23–24; *see Bleeker v. Vilsack*, 468 Fed. App'x 731, 732 (9th Cir. 2012) (plaintiffs must "adequately tie[] the adverse employment action to [their] protected activity").

This is insufficient for several reasons. First, Plaintiffs have not pointed to specific evidence in the record that Defendant Claborn or Defendant Revere (the only officers with any

connection to the POBRA violations discussed above) had knowledge of Plaintiffs' lawsuit. *See Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1132 ("*Quiroz II*") (N.D. Cal. 2015) ("Plaintiff does not allege that either Pimentel or Frisk had knowledge of plaintiff's previous grievances or lawsuit."). Defendants Claborn and Revere were not named as Defendants until July 2015. *See* July 13, 2015 State Court Order.

More fundamentally, Plaintiffs have not established a causal link. Plaintiffs have offered no evidence (or argument) to specifically link Plaintiffs' filing of the lawsuit in January 2014 and their appeal in February 2014 with the purported violations of Officer Slayton's § 3303 rights in the fall of 2014. As explained by Judge Koh in *Quiroz*:

> Though six months may support an inference of retaliation, *see Coszalter v. City of Salem,* 320 F.3d 968, 977 (9th Cir. 2003), it is usually insufficient by itself to support a finding of retaliatory motive, *see Pratt v. Rowland,* 65 F.3d 802, 808 (9th Cir. 1995). In order to establish a causal link sufficient to survive summary judgment based solely on temporal proximity, the protected activity and the adverse action must be "very close." *Clark County School District v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (citing cases finding periods of three and four months too long).

*Quiroz II*, 85 F. Supp. 3d at 1127.

Again, here, Plaintiffs only offer a blanket statement that all the adverse employment actions were proximate to the protected speech, and therefore, they must be causally related. *See* Opp'n at 24. But a "specified time period cannot be a mechanically applied criterion." *Coszalter*, 320 F.3d at 978. Indeed, in considering an adverse employment action that followed just a few weeks after the protected speech, the *Quiroz I* court wrote, "[s]uspect timing, without more, is usually not enough to show retaliatory intent." *Quiroz I*, 85 F. Supp. 3d at 1103 (quoting *Pratt*, 65 F.3d at 808); *see also Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc,* i.e., "after this, therefore because of this").

Looking to the "totality of the facts," *Coszalter*, 320 F.3d at 978, the Court finds Plaintiffs have not produced sufficient evidence of causation. Plaintiffs have not clearly pointed to any evidence that Sergeant Claborn or Commander Revere expressed opposition to Officer Slayton's protected conduct. *Quiroz II*, 85 F. Supp. 3d at 1127. Rather, Plaintiffs have only offered mere speculation without citation to the record. *See, e.g.*, Opp'n at 15 ("Defendant Claborn purposely omitted any information that Slayton was under investigation for excessive force and failure to report force . . . ."). This is not enough at the summary judgment stage. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient"). Additionally, Plaintiffs have not clearly pointed to evidence that Defendants' reasons for acting as they did were false or pretextual. *See Ellins*, 710 F.3d at 1062. Defendants argue they had an interest in meeting with Officer Slayton and obtaining the basic facts from him when investigating the September 26, 2014 incident. Plaintiffs have not offered evidence to counter Defendants' argument that Officer Slayton was not being investigated for misconduct in connection with that event.

Thus, even if Officer Slayton has established he suffered an adverse employment action because of the purported POBRA violations – which he has not – he has not demonstrated his protected conduct was a substantial or motivating factor in causing that adverse employment action.

### 3.    Threatened with Punitive Action

Next, Officer Slayton states he suffered an adverse employment action because he was "threatened with punitive action if he did not answer questions or turn over his personal property." Opp'n at 23. Plaintiffs provide no clear citations to the record. *See* Opp'n at 23.[9] The Court finds that this alone warrants a finding in Defendant's favor. *See Harper v. Lugbauer*, Case No. 11-cv-01036-JST, 2014 WL 1266305, at *13 ("These citations are insufficient to raise a genuine issue of material fact because Harper fails to cite to particular facts within these documents as required by Rule 56(c)) (citing *Keenan*, 91 F.3d at 1279).

---

[9] Plaintiffs provide no citation in the section concerning First Amendment retaliation. But even in the other parts of their Opposition concerning this issue, Plaintiffs do not cite evidence with any reasonable degree of specificity. *See* Opp'n at 10 (citing SUF 558–601); *see* Opp'n at  2 (citing SUF 82–105).

The Court is unclear as to what threats Plaintiffs are referring to, and Plaintiffs have not cited any evidence with particularity. It appears Plaintiffs may be referring to Sergeant Alvarez's order to Officer Slayton to produce the video from his body camera. As discussed below, the Police Department's order to Officer Slayton to remove his body camera does not constitute an adverse employment action in itself. In any event, threats of punitive action are not likely to rise to the level of an adverse employment action. In *Gutierrez*, for example, the employer sent a "disciplinary counseling" memo to an employee warning her to follow company policy "to avoid future discipline or possible termination." *Gutierrez v. Sodexo, Inc.*, Case No. 13-cv-00946-VC, 2014 WL 3725343, at *1 (N.D. Cal. July 24, 2014) (citation omitted). The court found this was not an adverse employment action. *Id.* Further, as the Ninth Circuit has made clear, "[m]ere threats and harsh words are insufficient" to constitute an adverse employment action. *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998); *see also Hellman v. Weisberg*, 360 Fed. App'x 776, 779 (9th Cir. 2009) ("It is undisputed that Hellman was never fired or prosecuted, and the *mere threat of termination does not constitute an adverse employment action*") (emphasis added). As the Ninth Circuit stated, "it would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Id.* Plaintiffs have provided no contrary authority. Therefore, the Court cannot conclude Plaintiffs' conclusory statement that Sergeant Alvarez verbally threatened Officer Slayton with insubordination is sufficient to establish he suffered an adverse employment action.

Even if these threats could constitute an adverse action, Plaintiffs have provided no evidence of causation. Again, Plaintiffs have not alleged that Defendant McGeachy (the only individual Defendant with any connection to this allegation) possessed the requisite knowledge of the suit. *See Quiroz II*, 85 F. Supp. 3d at 1132.[10] He was not named in the lawsuit until July 2015. Moreover, Plaintiffs have offered no specific argument or evidence of any connection between the protected speech and the vague actions. *See* Opp'n at 23–24. Rather, Plaintiffs have only broadly stated the two events were proximate. But the alleged adverse action (assuming it

---

[10] At the hearing, Plaintiffs' counsel argued that Defendant McGeachy had knowledge of the lawsuit because he was present when Defendant Rojas was served. Plaintiffs did not point the Court to evidence in support of this fact. Regardless, this allegation still fails for the fundamental reasons that Plaintiffs have not demonstrated Officer Slayton suffered an adverse employment action nor introduced sufficient evidence as to causation.

is Sergeant Alvarez's comment to Officer Slayton) here took place approximately one year after the protected speech and approximately six months after Officer Slayton's reinstatement; where, as here, Plaintiffs rely solely on timing, this is insufficient. *See Quiroz II*, 85 F. Supp. 3d at 1127 ("In order to establish a causal link sufficient to survive summary judgment based solely on temporal proximity, the protected activity and the adverse action must be 'very close.'") (quoting *Clark County*, 532 U.S. 268, 273–74) (citations omitted). Accordingly, Plaintiffs have failed to establish a prima facie case of retaliation with respect to this allegation.

**4.    Served with Written Reprimands for Matters Outside the Statute of Limitations and for Matters That Are False**

Plaintiffs contend that Officer Slayton was "served with written reprimands for matters that are outside the statute of limitations and for matters that are false." Opp'n at 23. Plaintiffs have not cited to any part of the record. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact")).

Based on the Court's independent review of the record, it appears Plaintiffs are referencing the August 20, 2014 written reprimand. *See* Official Reprimand at 1. Officer Slayton received this reprimand because he violated Department Order 110, Section V.S.1 (taking departmental vehicle out of the City without permission). *See id.*

To be clear, the Court recognizes a "reprimand containing a false accusation" may constitute an adverse employment action. *See Coszalter*, 320 F.3d at 976. But in this case, Officer Slayton has provided no evidence that any accusations contained in the reprimand are false. Rather, Plaintiffs explicitly state, "the merits of the reprimand are not being challenged as this case is about violations of the Public Safety Officers Bill of Right Act." SAF No. 14. Thus, it appears Plaintiffs are objecting to the fact that Officer Slayton was served with a reprimand on August 20, 2014 – more than one year after the incident, which occurred on June 28, 2013. Opp'n at 7 ("Even though the event took place in June 2013, and the investigation had been

completed in September 2013, the reprimand was not served on Slayton until the one year statute of limitation expired, on August 29, 2014.").[11]

As with above, violations of state laws like POBRA generally cannot serve as the basis of § 1983 claims. *See Campbell*, 141 F.3d at 930. Regardless, the Court concludes that Defendants did not violate Officer Slaytons' POBRA rights. Section 3304(d)(1)(E) provides that "[t]he public agency shall not be required to discipline within the one-year period . . . [i]f the investigation involves an employee who is incapacitated or otherwise unavailable." Here, Defendants argue Officer Slayton was unavailable during his termination period, and therefore "the statute of limitations was tolled." Mot. at 13. The Court agrees. A California appellate court reached that conclusion under the same facts. In *Sanchez*, the Los Angeles Police Department began investigating a detective prior to his discharge, and then resumed investigation three years later when that detective was reinstated. *See Sanchez v. City of Los Angeles*, No. B211659, 2009 WL 2569254, at *4 (Cal. Ct. App. Aug. 21, 2009). The California appellate court concluded the statute was tolled during the time of the detective's discharge. *Id.* at *5 ("Because the running of the one-year period was suspended between the June 30, 2003 discharge and the January 3, 2006 reinstatement (§ 3304, subd. d(5)), less than eight months elapsed between the Department's discovery of Sanchez's misconduct related to the computer use and its June 27, 2006 notification to Sanchez of the proposed disciplinary action. Therefore, count 1, relating to computer misuse, was timely."). As the *Sanchez* court stated, Plaintiffs' "interpretation of the statutory scheme would result in an absurdity" because it would require police departments to issue discipline *after* termination and during an officer's appeal. *Id.* at *5 n.5. Thus, because the statute of limitations was tolled for approximately six months, the Court finds the Police Department did not violate POBRA by issuing a reprimand to Officer Slayton on August 20, 2014.

Because the Police Department complied with POBRA, Plaintiffs have not established an adverse employment action. Further, Plaintiffs have not adequately shown (or even alleged)

---

[11] The Court notes the discrepancy between the August 20, 2014 and August 29, 2014 dates. It appears the reprimand was issued on August 20, 2014, but that Officer Slayton did not receive the reprimand until August 29, 2014. *See* Official Reprimand at 1.

a specific link between Officer Slayton's protected speech and the supposedly delayed written reprimand. *See Hoch v. Mayberg*, No. 1:10-cv-02258-DLB PC, 2012 WL 1192846, at *3 (E.D. Cal. Apr. 10, 2012) ("[T]he causal link between the defendant and the claimed constitutional violation must be specifically alleged."). And to the extent Plaintiffs are challenging the content of the written reprimand, they have pointed to no evidence suggesting that Officer Slayton did not violate Department Order 110, Section V.S.1 (taking departmental vehicle out of the City without permission). In fact, Defendants have strong evidence they would have issued the written reprimand even absent Officer Slayton's protected speech – they began investigating him on August 5, 2013, several months before Officer Slayton's lawsuit or appeal. *See* Notification of Interview, August 5, 2013.

  For these reasons, the Court concludes Plaintiffs have failed to establish a prima facie case of retaliation with respect to this allegation.

### 5.   Denied Proper Notice of Investigations

Plaintiffs next claim Officer Slayton was "denied proper notice of investigations (when other involved officers have been provided proper notice)." Plaintiffs have cited to no evidence in the record to support this claim. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact")).

In any event, as discussed above, the Court determined the August 15, 2014 Notification of Interview complied with § 3303 of POBRA.[12] To the extent Plaintiffs are complaining about either the September 15, 2015 or October 19, 2015 Notice of Investigations, the Court notes those notices were prepared by Sergeant Matt Brown. *See* Notice of Investigation, September 19, 2015 (Dkt. 49-74) Ex. 115 at 1; *see* Notice of Investigation, October 19, 2015 (Dkt. 49-75) Ex. 116 at 1. Sergeant Matt Brown is not an individual Defendant in this case; Plaintiffs have not alleged any link between the October 19, 2015 Notice of Investigation and the individual

---

[12] It appears that Plaintiffs have premised the adverse employment action on violations of POBRA. Again, Plaintiffs have not provided the Court with any authority that violations of POBRA can serve as the basis of § 1983 claims. In any event, as discussed above, Plaintiffs have not adequately shown that his POBRA rights were violated here.

Defendants in this case. To the extent Plaintiffs are complaining about other notices, they have not clearly identified those for the Court.

Assuming Plaintiffs have established an adverse employment action, they have not sufficiently established causation for the reasons discussed above.

### 6.   Denied Back Pay After Being Reinstated

Officer Slayton next contends he was "denied back pay after being reinstated." Opp'n at 23. Plaintiffs provide no citations to the record. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact")).

It is true that denial of back pay constitutes an adverse employment action. *See Bautista v. BNSF Ry. Co.*, NO. C08-05732RJB, 2010 WL 1876188, at *5 ("[T]he parties do not dispute that the plaintiff . . . suffered [an] adverse employment action when he was . . . restored with only partial back-pay.").

Here, Plaintiffs allege Officer Slayton was only paid back through July 1, 2014 instead of through July 18 (the date of reinstatement). *See* SAP No. 618. But Plaintiffs' allegations are highly misleading – the evidence shows Officer Slayton was in fact paid. The pay statements submitted clearly show that Officer Slayton was paid for the pay period *beginning* on July 1, not that he was only paid through July 1. *See* Back Pay Calculations (Dkt. 49-80) Ex. 121 at 1 (showing that the pay period began on July 1, 2014).[13] As Defendants note, Officer Slayton has provided no evidence he was not paid for the period beginning on July 15. Reply at 2. Because Plaintiffs have produced no evidence Officer Slayton was denied back pay, Plaintiffs have not established an adverse employment action. In any event, even if Officer Slayton was denied back pay, they have produced no evidence linking that denial with any actions taken by the individual Defendants. *See Johnson*  588 F.2d at 743 (citation omitted) (noting that individual liability under § 1983 requires an individual to affirmatively act, participate in another's act, or

---

[13] At oral argument, Plaintiffs' counsel stated there was a material dispute whether Officer Slayton was denied back pay. However, the only evidence submitted on this issue shows that Officer Slayton was paid for February 5, 2014 to February 15, 2014 and every two weeks thereafter (beginning on March 1, 2014 and extending forward for a period of two weeks). Plaintiffs have submitted no contrary evidence; thus, there is no material dispute as to this issue.

omit to perform an act that is he is legally required to do); *see also Hoch v*, 2012 WL 1192846, at *3 ("[T]he causal link between the defendant and the claimed constitutional violation must be specifically alleged.").

### 7.    False Statements in Personnel Files and in Official Documents

Plaintiffs next claim Officer Slayton was subjected to an adverse employment action because he was "subjected to false statement[s] regarding his successful appeal placed in personnel files and in official documents." Opp'n at 23. Plaintiffs have not cited the record with any degree of particularity. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact"). Plaintiffs' allegation is so overbroad the Court simply cannot tell what Plaintiffs are even referring to. The allegation is "fragmentary, ambiguous, and offered without sufficient context to enable a reasonable trier of fact to assess meaningfully the content or purpose thereof." *Lucarelli v. Dillard*, No. C-05-1590 MMC, 2006 WL 2038256, at *5 (N.D. Cal. July 19, 2006).

Based on the Court's research, the placement of documents in an individual's personnel file can constitute an adverse employment action. *See Harris v. Harris*, No. 2:11-cv-2186 KJN PS, 2012 WL 5187764, at *2 (placement of "warning letter" in personnel file constituted an adverse employment action). The problem here is that Plaintiffs have not even identified what false statement regarding his appeal was placed in personnel file.[14] This conclusory allegation is insufficient, especially at the summary judgment stage.

Plaintiffs' allegation is so overbroad the Court simply cannot tell what Plaintiffs are even referring to – they have not identified the specific false statements. *See* Opp'n at 23. In

---

[14] As Defendants note in their Reply, "Which Defendant subjected Plaintiffs to a false statement regarding Slayton's successful appeal and placed it in his in personnel files and official documents?" Reply at 13. To the extent Plaintiffs are referring to a false statement other than Commander Esparza's memorandum, Plaintiffs have not adequately identified this action for the Court, pointed the Court to evidence in support of that action, or identified its causal relationship to Officer Slayton's protected speech. *See* Opp'n at 23. In a separate section of their Opposition (dealing with California Government Code § 3305), Plaintiffs broadly contend that "[a]ll these files contain false and misleading statements about Slayton and were all created after he filed this lawsuit and successfully invoked his right to due process." Opp'n at 20. Given this conclusory statement, the Court simply cannot identify what allegedly false statements Plaintiffs are referring to. Without more, the Court can neither conclude that Plaintiffs adequately produced evidence that Officer Slayton suffered an adverse employment action (or that there was any link to Officer Slayton's protected speech).

other words, Plaintiffs' alleged adverse employment action is "fragmentary, ambiguous, and offered without sufficient context to enable a reasonable trier of fact to assess meaningfully the content or purpose thereof." *Lucarelli v. Dillard*, No. C-05-1590 MMC, 2006 WL 2038256, at *5 (N.D. Cal. July 19, 2006). To the extent Plaintiffs are referring to Commander Esparza's internal memorandum, they have not produced evidence to support their First Amendment claim against the individual Defendants. Plaintiffs note Commander Esparza wrote a memorandum in July 2015 referencing the incident that led to Officer Slayton's wrongful termination. *See* SUF No. 369. However, Plaintiffs have not pointed to any evidence that any of the individual Defendants were connected to Commander Esparza's July 2015 report. Further, Chief Rojas issued a memorandum on August 23, 2015 clearly stating that "[t]his investigation *will not be included as part of . . . Officer Slayton's (#3081) general personnel file*." Memorandum, August 23, 2015 (emphasis added). Thus, contrary to Plaintiffs' broad allegations, the Court does not conclude the individual Defendants subjected Officer Slayton to false statements regarding his successful appeal in his personnel file or official documents.

Additionally, Officer Slayton plainly has not established causation. Plaintiffs have made no arguments linking Officer Slayton's January or February 2014 protected speech (or even his July 2014 reinstatement) with the report authored by Commander Esparza in July 2015. *See* Opp'n at 23–24. Rather, Plaintiffs rely solely on timing. But "[in] order to establish a causal link sufficient to survive summary judgment based solely on temporal proximity, the protected activity and the adverse action must be 'very close.'" *See Quiroz*, 85 F. Supp. 3d at 1127 (quoting *Clark County*, 532 U.S. 268, 273–74) (citations omitted). That is not the case here.

### 8.   Subjected To Findings of Non-sustained Allegations of Misconduct Changed to Sustained Findings

Next, Officer Slayton argues he was "subjected to findings of non-sustained allegations of misconduct changed to sustained findings." Opp'n at 23. Plaintiffs have not cited to the record. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that

it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").

Plaintiffs' allegation is so overbroad the Court simply cannot tell what Plaintiffs are even referring to. The allegation is "fragmentary, ambiguous, and offered without sufficient context to enable a reasonable trier of fact to assess meaningfully the content or purpose thereof." *Lucarelli*, 2006 WL 2038256, at *5. Thus, Plaintiffs have not shown Officer Slayton suffered an adverse employment action. Further, because Plaintiffs "fail to offer any evidence as to when the [findings] were made, there is no evidence to support a finding that any of those [findings] were made in response" to Officer Slayton's protected speech. *See id.*; *see also Cafasso, U.s. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

### 9.   Subjected To False and Negative Performance Evaluations

Officer Slayton contends he was "subjected to false and negative performance evaluations." Opp'n at 23. Plaintiffs have not cited to the record. *See id.*; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "scour the record in search of a genuine issue of triable fact").

Plaintiffs are referring to the performance evaluation of Officer Slayton, which covered the period from December 1, 2012 through December 1, 2013. Plaintiffs note that Sergeant Hernandez completed this evaluation in December 2013. *See* SUF No. 457. The performance evaluation referenced three professional standards investigations involving Officer Slayton. *Id.* No. 473. Officer Slayton received a score of "2" (below average) on the judgment section of the performance evaluation. *Id.* No. 471. He received a score of "4" (exceeds job standards) for his overall rating. Performance Evaluation at 7.

Negative performance evaluations can constitute adverse employment actions. *See Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) ("undeserved performance ratings, if proven, would constitute 'adverse employment decision'"). Here, Defendants argue the

performance evaluation was actually positive; however, this is an insufficient reason to grant summary judgment in their favor. *See Leiland v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1098 (N.D. Cal 2008) ("Defendants argue that they are entitled to summary judgment with respect to Chris Logia's evaluation because the evaluation was not negative but rather positive. This, however, is a disputed issue of material fact for the jury to decide and for which resolution on summary judgment is inappropriate.").

However, Plaintiffs' allegations still suffer from fatal defects. Plaintiffs have not established any causation between Officer Slayton's protected speech and the performance evaluation. Plaintiffs offer no argument on causation, but rather broadly state all the adverse employment actions were proximate to the protected speech. *See* Opp'n at 23–24. However, the evidence Plaintiffs cite to shows Sergeant Hernandez "completed the evaluation and signed it on December 15, 2013." *See* SAF No. 457. In other words, the performance evaluation was completed *before* Officer Slayton's protected speech. Thus, it is implausible for the Court to conclude Officer Slayton's protected speech was a substantial or motivating factor in causing the performance evaluation. Plaintiffs offer no explanation. Additionally, Plaintiffs do not point the Court to any evidence in the record showing the individual Defendants had any connection to the performance evaluation. *See Johnson*, 588 F.2d at 743 (noting that individual liability under § 1983 requires an individual to affirmatively act, participate in another's act, or omit to perform an act that is he is legally required to do) (citation omitted); *see also Hoch*, 2012 WL 1192846, at *3 ("[T]he causal link between the defendant and the claimed constitutional violation must be specifically alleged.").[15] Thus, Plaintiffs have failed to establish a prima facie case of First Amendment retaliation.

### 10.   Officer Slayton Had His Locker Entered into Without Justification

Officer Slayton states "he had his locker entered into without justification." Opp'n at 23. Plaintiffs have not cited the record. *See* Opp'n at 23; *see Keenan v. Allan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence

---

[15] At the hearing, Plaintiffs' counsel argued Officer Slayton's performance evaluations should not have contained any references to pending internal affairs investigations. Even so, a fundamental problem remains: Plaintiffs did not adequately link these actions to any of the individual Defendants. *See Johnson*, 588 F.2d at 743.

that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").

Officer Slayton is apparently referring to two events: (1) when Sergeant Claborn placed Officer Slayton's department issued items in the locker in December 2013, and (2) when Officer Slayton's items were moved from locker #1449 to locker #1414 because the locking mechanism on locker #1449 was rusted and broken in July 2014. Neither of these events qualifies as an adverse employment action.

With respect to the December 2013 event, Plaintiffs proffer no evidence Sergeant Claborn entered Officer Slayton's locker outside of Officer Slayton's presence when he was terminated in December 2013. The available evidence suggests otherwise. *See* Sergeant Michael Claborn Memorandum at 1. Second, Sergeant Claborn's December 20, 2013 Memorandum reads that he "placed his [Officer Slayton's] department issued Glock handgun serial #GZA405, department issued keys, badge, and flat badge inside his assigned locker." *Id.* Indeed, Plaintiffs corroborate this account. *See* SAF No. 323 ("Slayton gathered some personal belongings. His badge and gun were secured in his locker and was escorted out the back ramp."). Plaintiffs have not argued how securing department-issued items (including weapons) in a locker constitutes an adverse employment action, especially considering that Officer Slayton had just been terminated. Third, Plaintiffs again offer no evidence of a causal link – indeed, this event took place *before* Officer Slayton's protected speech. Thus, it is implausible for the Court to conclude Officer Slayton's protected speech was a substantial or motivating factor in this event.

Likewise, with respect to the July 2014 event, Plaintiffs have not shown Officer Slayton suffered an adverse employment action. The evidence shows Sergeant Claborn wrote an email to Officer Slayton, stating that "[a]nother member of Professional Standards was with me when I moved a couple of items you had from locker #1449 to locker #1444" because the "locking mechanism" on exterior locker #1449 was "rusted and broken." Locker Emails (Dkt. 49-26) at 1. The evidence also shows that Officer Slayton had previously removed his personal items from the locker. *See* SAF No. 323. Moving non-personal items from one locker to another

while an individual is on administrative leave is not an adverse employment action. *See Blair*, 608 F.3d at 544 ("Minor indignit[ies] and de minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim."). This action is not "of a nature that would stifle someone from speaking out." *Id.* Even if it constituted an adverse action, Plaintiffs have offered no argument or evidence specifically linking Officer Slayton's protected speech and the adverse employment action. *See Hoch*, 2012 WL 1192846, at *3 ("[T]he causal link between the defendant and the claimed constitutional violation must be specifically alleged."). Furthermore, Defendants introduced evidence that they would have moved the items even absent the protected speech – namely, that the locking mechanism on locker #1449 was rusted and broken. Plaintiffs have not countered this evidence. Accordingly, Plaintiffs have not produced sufficient evidence to survive summary judgment.

### 11. Ordered to Remove a Body-camera Even Though There Is No Policy Against an Employee Wearing One

Plaintiffs next argue Officer Slayton suffered an adverse employment action because he was "ordered to remove a body-camera even though there is no policy against an employee wearing one." Opp'n at 23. Plaintiffs fail to cite to the record. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").

In short, Officer Slayton, without authorization, began wearing a personal body camera after he was reinstated. After learning about Officer Slayton's body camera after the September 26, 2014 incident, Deputy Chief McGeachy ordered Officer Slayton to remove his personal body camera on October 1, 2014. SAF No. 567. It appears Plaintiffs argue this constituted an adverse employment action.

Plaintiffs have offered no specific argument on how this order constitutes an adverse employment action. *See* Opp'n at 23. The Court concludes it does not. Based on the Court's research of the relevant case law, orders by supervisors can constitute adverse employment actions under certain circumstances. For example, in *Asaro v. Sealy Mattress Mfg.*, a district

court found that "being ordered to enter the dumpster and perform unsafe and unsanitary tasks is an adverse employment action." No. CV-09-295-ST, 2010 WL 4812809, at *10 (D. Or. Nov. 19, 2010); *see also Halprin v. Lakeside Inn*, No. 3:13-cv-0220-LRH-WGC, 2014 WL 2772312, at *2 (D. Nev. June 18, 2014) (finding that order to remove plaintiff's chair "from Lakeside Inn property, thereby preventing him from performing his job that day and in disregard for his disability" could constitute an adverse employment action).

This situation is far different, however. In this case, Officer Slayton was ordered to remove a personal body camera he was not authorized to wear. As Deputy Chief McGeachy explained in his October 1, 2014 email,

> It has come to my attention that Officer is wearing a body worn camera while on-duty. While the organization recognizes there are benefits of body worn cameras, there are a number of policy concerns that expose the department to liability such as confidentiality and preservation of evidence issues. Department Order 733 identified the circumstances under which an officer may carry and use a recording device, which is issued by CDC. Currently, audio recorders are the only devices being issued to officers. Therefore, please instruct Officer Slayton to stop carrying his personal body warn camera effective immediately. If Officer Slayton wishes to record his field contacts, please direct him to CDC to be provided with a department issued recorder and he may subsequently record his contacts in accordance with the guidelines established by the Departmental Order.

McGeachy Email Re: Body Camera (Dkt. 49-66) at 2.

Indeed, Departmental Order 733 outlines several conditions officers must meet in order to be issued a portable digital recorder. *See* Departmental Order 733 (Dkt. 42-15) Ex. 15 at 2 ("Prior to using the digital recorder, the officer shall complete the required training course covering operation of the device, downloading procedures and retention of recorded content.").

Put simply, Defendants had justification to order Slayton to remove his body camera. Plaintiffs offer no compelling response. Thus, the Court does not find that, under these

circumstances, a supervisor ordering an employee to comply with internal policies is an adverse employment action. Further, Plaintiffs have made no specific arguments as to causation; rather, Plaintiffs, again, solely rely on temporal proximity. *See* Opp'n at 23–24; *See Hoch*, 2012 WL 1192846, at *3 ("[T]he causal link between the defendant and the claimed constitutional violation must be specifically alleged."). Here, approximately eight months passed between Officer Slayton's protected speech and the request to remove the body camera. *See Quiroz II*, 85 F. Supp. 3d at 1127 ("In order to establish a causal link sufficient to survive summary judgment based solely on temporal proximity, the protected activity and the adverse action must be 'very close.'") (quoting *Clark County*, 532 U.S. 268, 273–74) (citations omitted). And even if Plaintiffs have raised a prima facie case of retaliation, Defendants have provided several legitimate reasons for requiring Officer Slayton to remove his personal body camera. Thus, Defendants "would have taken the adverse employment action even absent the protected speech." *See Dahlia*, 735 F.3d at 1067 n.4.

### 12.    Passed Over for Promotions and/or Selections to Special Assignments

Lastly, Officer Slayton adds he was "passed over for promotions and/or selections to special assignments." Opp'n at 23. As Defendants point out, it does not appear Plaintiffs alleged this adverse employment action in their TAC. *See* Reply at 15. Further, Plaintiffs have not cited to the record. *See* Opp'n at 23; *see Keenan*, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").

Officer Slayton applied for two positions in September 2015. Nine qualified candidates applied for one available position and eight qualified candidates applied for the second available position; Officer Slayton was not selected for either one. Denial of promotions can certainly constitute adverse employment actions. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (noting that "refusal to consider for promotion" can constitute an adverse employment action); *De Markoff v. Superior Court of California*, No. 1:11-CV-02017 AWI MJS, 2014 WL

2895200, at *3 (E.D. Cal. June 25, 2014) ("A reasonable jury could find that being passed over for the CFO position in 2010 is an adverse employment action.").

In this case, Plaintiffs have provided no evidence linking Officer Slayton's protected speech to his failure to secure a promotion. *See Nunez*, 147 F.3d at 875 ("[A]lthough the LAPD did not select him for promotion, Nunez has not provided any evidence linking this decision to his criticisms."). There is no evidence linking any of the individual Defendants to the motor officer position. Further, Plaintiffs rely solely on temporal proximity to establish causation. *See* Opp'n at 23–24. However, approximately twenty months passed between Officer Slayton's protected speech and the denial of the promotions. This is insufficient. *See Quiroz II*, 85 F. Supp. 3d at 1127 ("In order to establish a causal link sufficient to survive summary judgment based solely on temporal proximity, the protected activity and the adverse action must be 'very close.'") (quoting *Clark County*, 532 U.S. 268, 273–74) (citations omitted).

### 13.    Conclusion Regarding First Amendment Retaliation Claim

For the reasons discussed above, the Court finds Plaintiffs have not established Officer Slayton suffered any adverse employment action, much less produced sufficient evidence to survive the "sequential five-step series of questions." *Eng*, 552 F.3d at 1070.[16] To the extent Plaintiffs have produced other evidence in the record, the Court finds Plaintiffs have failed to clearly identify these for the Court. *See* Opp'n at 22; *see Harper*, 2014 WL 1266305, at *17.

As such, Defendants are entitled to summary judgment as to Plaintiffs' First Amendment claim.

### B. Plaintiffs' Fourth Amendment Claim

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. The test of reasonableness requires balancing the need for the particular search against the invasion of personal rights that search entails. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Courts must consider the scope of the particular intrusion,

---

[16] At the hearing, Plaintiffs' counsel correctly asked the Court to consider the "totality of the facts." *Coszalter*, 320 F.3d at 978. However even considering the totality of the facts, the Court finds that Plaintiffs have not adequately shown that Officer Slayton suffered an adverse employment action, much less one that was caused by Officer Slayton's protected speech.

the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

"The Supreme Court has established two overlapping frameworks for analyzing Fourth Amendment claims against government employers." *Laval v. Jersey City Hous. Auth.*, Civ. No. 2:10-04416 (KM)(MAH), 2014 WL 683974, at *9 (D.N.J. Feb. 19, 2014) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717). The plurality in *O'Connor* rejected the notion that "public employees can never have a reasonable expectation of privacy in their place of work," and set forth a two-step framework for considering Fourth Amendment claims against government employers. 480 U.S. at 717–19, 725–26. First, courts must consider [t]he operational realities of the workplace" in order to determine "whether an employee has a reasonable expectation of privacy" there. *Id.* at 717.  That determination is to be made on "a case-by-case basis." *Id.* at 718. Second, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.* at 725–726. Justice Scalia offers another approach – he "stated categorically that the Fourth Amendment covered the government workplace." *Laval*, 2014 WL 683974, at *9. Courts must simply ask "if the government's search would be 'regarded as reasonable and normal in the private-employer context.'" *Richards v. City of Los Angeles*, 775 F. Supp. 2d 1176, 1185 (C.D. Cal. 2011). "Under either approach, employers are given 'wide latitude' to enter their employee's offices for work-related, non-investigatory reasons, as well as for purposes of investigating work-related misconduct." *Id.*[17]

Here, Plaintiffs argue Officer Slayton's Fourth Amendment rights were violated when Officer Slayton was ordered to turn over videos of on-duty incidents. Opp'n at 25; *See* Alvarez

---

[17] The Court finds the *O'Connor* warrant exception applies here. "The workplace includes those areas and items that are related to work and are generally within the employer's control." *O'Connor*, 480 U.S. at 716. Here, the videos were related to work: Officer Slayton wore the body camera while on duty and the requested footage was of police-related incidents. Further, the videos were within the employer's control; indeed, Departmental Order 733 provides that recorded content must be made available to supervisors. *See* Departmental Order 733 at 2. Therefore, this case is unlike *Delia* where the defendants were not conducting a workplace search but rather were attempting to search a firefighter's home. *See Delia v. City of Rialto*, 621 F.3d 1069, 1076 n.4 (9th Cir. 2010) ("The *Quon-O'Connor* workplace warrant exception, however, has no application here. Although the search at issue in this case arose as a result of a workplace investigation, defendants were not seeking to search Delia's workplace environment, but his home.") (citations omitted).

Deposition at 106:12–20 ("[W]e gave him the guidelines of when he had to turn over the for this incident, this particular incident . . . and Sergeant Rodriguez also mentioned that if he still had videos of other incidents . . . ."). The Court does not find this conduct rises to the level of a Fourth Amendment violation.[18]

As an initial matter, neither party has sufficiently briefed the issue of whether Officer Slayton had a reasonable expectation of privacy in the videos. As the Supreme Court explained, "public employees' expectation of privacy in their offices, desks, file cabinets and the like may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Pick v. City of Remsen*, No. C13-4041-MWB, 2014 WL 4258738, at *19 (N.D. Iowa Aug. 27, 2014). The evidence here strongly shows Officer Slayton was not authorized to use a body camera while on duty.

But even assuming that Officer Slayton had a reasonable expectation of privacy, Deputy McGeachy's request did not violate that reasonable expectation of privacy. The Court finds the request for Office Slayton's video comfortably fits within "the requirements of the O'Connor plurality approach:  there is no substantial dispute that it was motivated by a legitimate, work-related purpose and was reasonable in scope." *Laval*, 2014 WL 683974, at *10. The evidence shows Sergeant Alvarez (at Deputy McGeachy's direction) specifically requested the video footage of the September 26, 2014 incident for evidentiary purposes. Alvarez Deposition at 89:9–12 ("[T]he deputy chief wanted to know if Corey was wearing a body camera at the time of the incident, and, if so, we needed a copy of that video for evidence."); *id.* at 90:16–19 ("I

---

[18] At the hearing, Plaintiffs' counsel also argued the two locker searches constituted a Fourth Amendment violation. Plaintiffs neither alleged this in their Third Amended Complaint nor raised this argument in their Opposition. *See* TAC ¶¶ 150–51; Opp'n at 25. Thus, this issue was not raised until Defendant; rather, Plaintiffs only discussed the alleged search of the video footage. Arguments raised for the first time at oral argument are waived. *See Johnson.*, 614 F.3d at 1069. In any event, the Court finds neither of the two incidents concerning Officer Slayton's rises to the level of a Fourth Amendment violation. As discussed above, the evidence shows Sergeant Claborn secured Officer Slayton's department-issued items in his locker and moved non-personal items from one exterior locker to another because of a rusted lock during Officer Slayton's administrative leave. Plaintiffs have not offered any specific argument as to how these actions violate the Fourth Amendment. Indeed, the Court finds these actions were "motivated by a legitimate, work-related purpose and [were] reasonable in scope," and thus do not constitute a Fourth Amendment violation. *See Laval*, 2014 WL 683974, at *10.; *see O'Connor*, 480 U,S, at 722 ("In our view, requiring an employer to obtain a warrant whenever the employer wished to enter an employee's office, desk or file cabinets for a work-related purpose would seriously disrupt the routine conduct of business and would be unduly burdensome . . . ."). Further, Plaintiffs have not produced any evidence that personal objects were moved from one locker to another while administrative leave – indeed, the evidence shows that non-personal items were moved.

asked him if he had been wearing a camera or body camera of some sort, and if he had footage of the incident . . . .”). The Court finds it reasonable that Officer Slayton was ordered to turn over footage of a criminal event, especially considering the fact Officer Slayton was not authorized to wear a personal body camera.[19] Additionally, Departmental Order 733 – which concerns portable digital recording devices – explicitly provides the following policy: “[t]he officer shall properly preserve recorded content in accordance with this Order and *make it available to supervisors and other Department personnel as required*.” Departmental Order 733 at 2. Because Deputy McGeachy’s request of the video footage was “motivated by a legitimate, work-related purpose and was reasonable in scope,” *Laval*, 2014 WL 683974, at *10, the Court cannot conclude the request was unreasonable. Plaintiffs have neither offered compelling counterpoints in their Opposition nor pointed the Court to any conflicting evidence. *See* Opp’n at 24–26.[20]

Accordingly, Defendants are entitled to summary judgment as to Plaintiffs’ Fourth Amendment claim.

### C. Plaintiffs’ Fifth/Fourteenth Amendment Claims

Finally, Defendants move for summary judgment as to Plaintiffs’ due process claims under the Fifth and Fourteenth Amendments. Opp’n at 26–28.

As an initial matter, Plaintiffs’ Fifth Amendment claim “is plainly foreclosed by the Constitution[, since] the Fifth Amendment’s due process clause *only* applies to the federal government.” *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Therefore, Defendants are entitled to summary judgment as to Plaintiffs’ Fifth Amendment claim.

Therefore, the Court will only consider Plaintiffs’ Fourteenth Amendment claim. “Procedural due process imposes constraints on governmental decisions which deprive individuals of ‘liberty’ or ‘property’ interests within the meaning of the Due Process Clause of

---

[19] At oral argument, Plaintiffs cited to *Delia* for the proposition that an order requiring Officer Slayton to turn over videos of incidents constituted a Fourth Amendment violation. *See Delia v. City of Rialto*, 621 F.3d 1069 (9th Cir. 2010). This argument misses the mark. The *Delia* case involved an order for the individual to *go into his house* to produce personal property that was part of an investigation into off-duty activities. *See id.* at 1071–72. In this case, Officer Slayton was not ordered to go into his home to retrieve an item that was completely unrelated to work; rather, he was ordered to produce video footage of a criminal incident that he filmed while on-duty.

[20] Plaintiffs focus on the warrant requirement. *See* Opp’n at 25. However, work-related searches in the workplace context do not require warrants. *O’Connor*, 480 U.S. at 722.

the ... Fourteenth Amendment." (1976). "A ... procedural due process [claim] . . . has three

elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the

interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995

F.2d 898, 904 (9th Cir. 1993).

Plaintiffs have not discussed these three elements, and their allegations with respect to

this claim are particularly difficult to follow. Plaintiffs state the following in their Opposition:

> Plaintiff asserts that Defendant Nimmo concealed exculpatory evidence
> from him; to wit, all the information provided to Nimmo from the Sgt. U.
> Gonzalez, first Internal Affairs Sergeant assigned to conduct the
> investigation. Then Defendant Claborn threatened witness with charges of
> untruthfulness if they didn't provide the answers Claborn was looking for.
> Moreover, Claborn admittedly destroy evidence provided to him during the
> internal investigation. While Defendants may claim this is acceptable, the
> other Defendants conceded that this was misconduct by Claborn and
> Revere. Next, the internal investigation was generated based on a complaint
> from Defendant Rojas. Rojas then controlled the recommendations of his
> subordinates and direct the content and final recommendations of
> Defendant McGeachy and another commander. None of this information
> was provided to Slayton until it was discovered during discovery in this
> action. Moreover, Defendants refused to provide Slayton with copies of his
> personnel file, which evidently was reviewed by Defendant Rojas.

Opp'n at 26–27. Plaintiffs provide no citations to the record. Therefore, Plaintiffs have failed to

present the Court with a genuine issue of material fact. *See Riese*, 2014 WL 4089195, at *5

(noting plaintiffs' failure "cite evidence in support of [their] allegations is sufficient basis to

grant [Defendants'] motion for summary judgment."). Based on its own review of the record,

the Court has not found much in the way of evidentiary support for Plaintiffs' wide-ranging

allegations. For instance, the evidence does not show that Sergeant Claborn destroyed evidence;

rather, Sergeant Claborn stated he saved all the documents on his computer before discarding a CD. *See* Deposition of Michael Claborn ("Claborn Deposition") (Dkt. 50-7) at 58:11–59:14.

While it is difficult for the Court to follow, it appears Plaintiffs are alleging due process violations based upon procedural defects in the initial Internal Affairs investigation that led to Officer Slayton's termination. For instance, Officer Slayton alleges that "Defendant Rojas denied him his right to pre-disciplinary due process." Opp'n at 27. However, Officer Slayton simultaneously (and contradictorily) states he received a *Skelly* hearing, SAF No. 341. Thus, the Court is simply left with Plaintiff's unsupported conclusory allegations.

At bottom, Plaintiffs have not produced evidence to establish that Officer Slayton's due process rights were violated. As the Ninth Circuit has explained, "[t]he touchstone of analysis in property deprivation cases is whether the plaintiff received adequate due process before he was *finally* deprived of his property." *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985). In *Gearhart*, the plaintiff, "alleged that he received full grievance hearings after his demotion and salary cuts, and that he prevailed with full reinstatement and back pay." *Id.* The Ninth Circuit found that

> Since the property rights in demotion and salary can be and were fully restored, we conclude that on balance, the grievance procedure provided adequate due process, *see generally Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and that Gearhart received all the process he was due before any final deprivation of his interests. Thus, since he prevailed in these hearings, he has obtained his remedy and his complaint fails to allege facts that constitute a due process violation with respect to these property interests.

*Id.* at 1073–74.[21] The same situation exists here. It is true that "where a constitutional violation has occurred, an individual may pursue remedies beyond those provided by established grievance procedures." *Jackson v. Gates*, 975 F.2d 648, 655 (9th Cir. 1992). But as discussed

---

[21] While Plaintiffs' counsel discussed the alleged due process violations at length during the hearing, he failed to address this key point: how Officer Slayton was *finally* deprived of a property interest. Plaintiffs' Opposition also fails to adequately discuss this issue. *See Harris*, 2012 WL 5187764, at *16 (quoting *Gearhart*, 768 F.2d at 1073–74).

above, Plaintiffs have not established any independent constitutional violations here; therefore, Officer Slayton is not entitled to further relief. *Id.* ("Despite his First Amendment claim, Gearhart was ultimately found to have suffered no constitutional violation. He was therefore limited to the remedies provided by the grievance policy.").

As such, Defendants are entitled to summary judgment as to Plaintiffs' Fourth Amendment claim.

### D. Conspiracy To Violate § 1983

"To prove a conspiracy . . . under § 1983, [plaintiffs] must show 'an agreement or 'meeting of the minds' to violate constitutional rights.'" *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc)). Because Defendants have not violated Officer Slayton's First, Fourth, or Fourteenth Amendment rights, there is no evidence that they intended to violate his constitutional rights. Therefore, Defendants are entitled to summary judgment as to this claim.

### E. Associational Rights

The Court recognizes there are two Plaintiffs in this case: Officer Slayton and the Santa Ana Police Officers Association. However, because Officer Slayton's claims have failed, the claims of the Santa Ana Police Officers Association necessarily fails as well. *See Contra Costa County Deputy Sheriffs Assoc. v. Mitchoff*, Case No. 15-cv-00261-TEH, 2015 WL 1322577, at *4 (N.D. Cal. Mar. 24, 2015) ("Plaintiff's members are indisputably employed by Defendants, and therefore would not to allege an adverse employment action to bring this suit in their own right. Because Defendants have not engaged in any adverse employment actions, members of the DSA [Deputy Sheriff's Association] cannot assert a First Amendment claim against them.").

### F. Plaintiffs' Remaining Claims & Supplemental Jurisdiction

Finally, the Court will consider whether to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim (and the declaratory relief claim based on that state law claim). Under 28 U.S.C. § 1367(c):

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

28 U.S.C. § 1367(c). At a minimum, the Court has discretion to dismiss the remaining state law claim under subsection (3), and possibly under subsection (1) as well.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). District courts enjoy broad discretion in determining whether to retain jurisdiction over pendent state law claims. *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000, *supplemented*, 121 F.3d 714 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c).").

Here, Plaintiffs have asserted state law claims and seek injunctive relief for various state law violations. After reviewing § 1367(c) and the *Cohill* factors, the Court declines to exercise supplemental jurisdiction in this case. As an initial matter, the Court has dismissed all claims in which it had original jurisdiction. Additionally, the Court notes the "primary responsibility for developing and applying state law belongs to state courts." *Kohler*, 2013 WL 5315443, at *8. While it addressed Plaintiffs' POBRA insofar as it was necessary to resolve their First Amendment retaliation claim, the Court has not definitively resolved all of Plaintiffs' varied and complex state law contentions under POBRA and does not find it prudent to decide whether injunctive relief is necessary in this case. To the extent Plaintiffs have any remaining

POBRA claims, those are better handled in state court. This is especially true considering the complexity of Plaintiffs' claims.

As such, the Court follows the reasoning of other courts in declining to exercise supplemental jurisdiction over Plaintiffs' state law claim. *See Kohler*, 2013 WL 5315443, at *8 ("In the interest of comity and fairness, we decline to exercise supplemental jurisdiction over Plaintiff's related state law claims) (citation omitted); *Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1124 (S.D. Cal. 2006) ("Because the Court has dismissed all claims over which it has original jurisdiction in this matter, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims."); *Pickern v. Best W. Timber Cove Lodge Marina Resort*, 194 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002) ("While the court recognizes the litigation of a new suit in state court may create some inconvenience to plaintiff, plaintiff has made no showing of extraordinary unusual circumstances.").

The Court also declines to exercise jurisdiction over Plaintiffs' claim for declaratory relief. Districts courts have "broad discretion in determining whether to exercise jurisdiction over the declaratory action . . . ." *Hoard v. Hartman*, Case No.:2:13-cv-02161-AC, 2015 WL 9700537, at *11 (D. Or. Dec. 4, 2015). In making such a determination, courts should consider whether jurisdiction would: (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). In this case, the declaratory relief Plaintiffs seek would involve the needless determination of state law issues, and it would not definitively resolve Plaintiffs' POBRA claims. Indeed, Plaintiffs' claim for declaratory relief is premised entirely on their second cause of action under POBRA, a state law claim. Again, to the extent Plaintiffs have any remaining POBRA claims, those are better resolved in state court. As the Ninth Circuit has explained, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in

issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir.1985) (en banc) (per curiam). Because neither of those goals will be accomplished here, the Court declines to exercise jurisdiction over Plaintiffs' claim for declaratory relief.

### V.    Disposition

For the foregoing reasons, the Court GRANTS Defendants' Motion as to all of Plaintiffs' § 1983 claims, and DISMISSES the remaining claims WITHOUT PREJUDICE subject to refiling in state court.

Defendants are directed to file a proposed judgment, consistent with this Order on or before **March 16, 2016.**

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  March 2, 2016